**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALBERT FARAH, <br><br> Plaintiff, <br> v. <br><br> ROBERT RICHESON, MICHAEL DESENA, ADRIANA DEBARRIOS, and MICHELLE BRITTON <br><br> Defendants. | 3:19-cv-01247 (CSH) <br><br> **SEPTEMBER 6, 2019** |

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

Plaintiff Albert Farah, a convicted prisoner currently incarcerated at the Garner Correctional Institution ("Garner") in Newtown, Connecticut, has filed a civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against four Connecticut Department of Correction ("DOC") officials employed at Garner in their individual and official capacities: Robert Richeson, Chief Operations Officer of Health Services; Michael DeSena, Medical Supervisor; Adriana De Barrios, Nursing Supervisor; and Michelle Britton, Registered Nurse (collectively, "the Defendants"). Doc. 1 ("Compl."). He seeks unspecified monetary damages. *Id.* at 15. On August 16, 2019, Magistrate Judge William I. Garfinkel granted Farah's motion to proceed *in forma pauperis*. Doc. 5. The Court denied Plaintiff's motion for a temporary restraining order and preliminary injunction on September 5, 2019. *See* Doc. 7.

The Court now reviews Farah's Complaint to determine whether his claims may proceed under 28 U.S.C. § 1915A. For the following reasons, the Complaint is DISMISSED.

1

# I. STANDARD OF REVIEW

The Court must dismiss a complaint "in which a prisoner seeks redress from a governmental entity[,] or officer or employee of a governmental entity," that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915A(a)-(b); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, a complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*Pro se* submissions "are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: A *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded, *id*.

## II. FACTUAL ALLEGATIONS

Farah was diagnosed with diabetes at the age of 33, over 25 years ago. Doc. 1 ("Compl.") at 10. On March 4, 2019, Farah walked to the medical unit because he was feeling ill. *Id.* at 6. After examining him, Nurse Britton told Farah that he did not have an abnormal temperature and that he should rest and drink water. *Id.* Afterward, Britton sent him back to his housing unit. *Id.*

The next day, Farah declined to eat breakfast, lunch, or dinner, and he did not show up to receive his 4:30 p.m. medication. *Id.* at 6. Thereafter, Nurse Ginger came to his cell and told him that she was going to ask a lieutenant if he could be escorted to the medical unit in a wheelchair. *Id.* Farah waited for one hour, but no officers arrived with a wheelchair. *Id.* He then decided to walk to the medical unit where Nurse Ginger assessed his vitals and then placed him in the infirmary. *Id.*

The day after, on March 6, Dr. Valletta examined Farah and concluded that he was suffering from bronchitis. Compl. at 6. Farah remained in the infirmary for five days. *Id.* Before being

3

placed in the infirmary, he had repeatedly requested help for chest pains, high temperature, coughing, and loss of appetite, but Nurse Britton did not assist him. *Id.* at 7. Farah also experienced extreme exhaustion, weight loss, and head pain during his five days in the infirmary. *Id.*

On April 22, 2019, Britton gave Farah another inmate's insulin medication. Compl. at 8. After eating his dinner, Farah started shaking and sweating, which he believed to be signs of the onset of hypoglycemia. *Id.* He asked Correction Officer Fortin to call the medical unit and request that Britton come to his unit to provide him with emergency sugar paste and check his vital signs. *Id.* Fortin later came to Farah's cell and told him that he had called the medical unit several times and paged Britton, but she did not call him back. *Id.* Farah then asked his cellmate for peanut butter and candy, which he ate with sugar packets to stop himself from shaking and sweating. *Id.* at 8-9. Britton later gave Farah an NPH and regular insulin injection mix, even though Farah needed 30 units of Lantus insulin. *Id.* at 9.

On April 23, 2019, Farah asked Britton about her failure to return Officer Fortin's calls on the previous day. Compl. at 9. Britton said that she was in the medical unit and was later in Farah's unit to pick up medical inmate requests, but was never informed by the officers about Farah's medical issue. *Id.*

Three days later, on April 26, 2019, Farah was walking toward the medical unit to receive his medication. Compl. at 10. At that time, Fortin informed him that he had contacted the medical unit several times over the course of two hours on April 22 and had paged Britton three times, but Britton never called him back. *Id.* When Britton arrived, Fortin asked her why she had not returned his calls on April 22.[1] *Id.* Fortin also documented the incident in the unit log. *Id.*

---

[1] Farah does not allege what Britton said in response to Fortin's question.

On May 11, 2019, while receiving his medication, Farah showed Britton his right elbow, which was infected. Compl. at 12. He requested antibiotic medication. *Id.* Britton said that she would call him later that evening and would ask the physician to prescribe antibiotics, but Farah never received a call from Britton. *Id.* Farah proceeded to dip his elbow in cold water to reduce the pain and inflammation from the infection. *Id.* at 13.

The next day, when Farah went to the medical unit to receive his insulin, he asked Britton why she failed to call him the previous night as she said she would. Compl. at 12. Britton responded that she had asked Nurse Eileen Law to call Farah the next day and prescribe him treatment. *Id.* Farah told Britton that no one had called him. *Id.* Britton then assured him that she would call him later that evening at 7:30 p.m. regarding his request for treatment. *Id.* At 8:30 p.m., after contacting the on-call physician, Britton examined Farah and gave him a prescription antibiotic. *Id.* at 13. The pain and infection in Farah's elbow cleared after seven days of antibiotic treatment. *Id.*

### III. ANALYSIS

Although he does not clearly state his claim, it appears from his allegations that Farah is attempting to state a claim that the Defendants acted with deliberate indifference to his serious medical needs, in violation of his Eighth Amendment protection against cruel and unusual punishment. The Court will dismiss the claim because, even construing Plaintiff's motion in the light most favorable to him as a *pro se* litigant, the allegations against Britton do not state a plausible deliberate indifference claim, and Farah has not alleged any facts against the remaining defendants.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). While the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate

5

medical care, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements – one objective and one subjective – are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).

Objectively, the alleged deprivation of adequate medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (internal quotation marks and citation omitted).

Subjectively, the defendant must have had actual awareness of a substantial risk that the inmate would suffer serious harm as a result of her conduct. *See Salahuddin*, 467 F.3d at 279-80. Put differently, the prisoner must show that the defendant knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . must also [have] draw[n] the inference.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Farmer*, 511 U.S. at 837); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (*per curiam*) (equating "deliberate indifference" with criminal "recklessness").

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *Salahuddin*, 467 F.3d at 280; *see also Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely

because the victim is a prisoner"). Moreover, a difference of opinion regarding what constitutes an appropriate response and/or treatment to a prisoner's medical conditions does not give rise to an Eighth Amendment claim. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010); *Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."). The act complained of must "'shock[] the conscience'" by constituting a "complete denial of, or intentional effort to delay access to, medical care, or a reckless or callous indifference" to the prisoner's safety. *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

### A. Claims Against Britton

Farah's Complaint stems from four discrete incidents: Britton's failure to diagnose the severity of Farah's illness, Compl. at 6-7; Britton's administration of a different inmate's insulin medicine to Farah, *id.* at 8; Britton's failure to respond to Officer Fortin's calls regarding Farah's medical emergency, *id.* at 8-10; and Britton's failure to call Farah at the times she said she would regarding his infected elbow, *id.* at 12-13. These allegations against Britton, whether taken together or separately, do not rise to the level of deliberate indifference under the Eighth Amendment standard.

Britton's failure to diagnose the nature or severity of Farah's condition constitutes, at most, negligence that falls short of a constitutional claim. As a matter of settled law, the mere fact that a prison medical provider misdiagnosed a patient or failed to recognize the severity of his condition cannot, standing alone, support an Eighth Amendment claim – even where the mistake was obvious

7

or highly consequential. *See, e.g.*, *Sheils v. Flynn*, No. 9:06–CV–407, 2009 WL 2868215, at *18 (S.D.N.Y. Sept. 2, 2009) ("While Defendants' failure to immediately diagnose the lesion on Plaintiff's shoulder as cancer was undoubtedly frustrating and frightening for Plaintiff, the record simply does not indicate any behavior on Defendants' part that elevates the situation from possible medical malpractice to the level of a constitutional violation."); *Felipe v. New York State Dep't of Correctional Servs.*, No. 95-CV-1735, 1998 WL 178803, at *3 (N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.) (granting defendants judgment on pleadings where plaintiff who complained of stomach pains was eventually diagnosed with gallbladder disease requiring surgery, and concluding that "Plaintiff's allegations amount to nothing more than possible medical malpractice or negligence"). Plaintiff has presented no allegations that his diagnosis was so devoid of sound medical basis or far afield of accepted professional standards as to raise an inference of deliberate indifference. *See Stevens v. Goord*, 535 F. Supp. 373, 388 (S.D.N.Y. 2008).

Similarly, the fact that Britton did not follow through on her assurances to call Farah or the physician at the times she said she would does not support an inference that she outright refused to treat him or disregarded a substantial risk that he would suffer harm. *See Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) ("Failing to comprehend the severity and urgency of a situation is negligence, not deliberate indifference"); *Pabon v. Wright*, No. 99-CV-2196 (WHP), 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) ("[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of harm"). Likewise, Britton's failure to respond to Officer Fortin's calls regarding Farah's hypoglycemic episode does not suggest that she "knew of and disregarded an excessive risk to inmate health and safety" – to the contrary, the strongest inference to be drawn from the fact that

8

Officer Fortin was unable to contact Britton is that Britton, while perhaps neglectful of her professional responsibilities, was entirely unaware of Farah's medical need at the time. *Chance*, 143 F.3d at 702. Particularly in the context of an overwhelmed and understaffed prison medical unit, the Court will not attribute a medical provider's delay, or even failure, in calling a patient back at a specified time to callous disregard for the patient's well-being.

Finally, with respect to the allegation that Britton gave Farah the wrong insulin injection, there are no factual allegations suggesting that the incident was anything other than a mistake or lapse in judgment. At most, this too amounts to negligence, not deliberate indifference.

### B. Claims Against DeSena, De Barrios, and Richeson

As for the remaining Defendants, Britton has not alleged any facts showing how they were even aware of, let alone personally involved in, the delay or deprivation of medical care. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). To the extent Farah seeks damages from the defendants based on their supervisory positions in the DOC, he must allege facts showing that each Defendant (1) directly participated in the constitutional deprivation; (2) learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.

9

2003).  The only information the Complaint provides about these Defendants is their titles.  The fact that these defendants occupy supervisory positions is, alone, insufficient to establish their personal involvement in the constitutional deprivations.  *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  Because Farah has not alleged any facts regarding the involvement of these Defendants, the claims against them are dismissed.

## IV. CONCLUSION AND ORDERS

For reasons stated herein, the complaint is **DISMISSED** for failure to state a plausible claim under § 1915A.

**It is SO ORDERED.**

Dated: September 6, 2019
   New Haven, Connecticut

/s/ Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge